UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTEMIA STEWART,

               Petitioner,                    Civil No. 05-10196
                                              Honorable David M. Lawson

v.

HUGH WOLFENBARGER,

               Respondent.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Artemia Stewart, presently confined at the Macomb Correctional Facility in New Haven, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner was convicted of second-degree murder, Mich. Comp. Law § 750.317, armed robbery, Mich. Comp. Law § 750.529, and possession of a firearm during the commission of a felony ("felony firearm"), Mich. Comp. Law § 750.227b, following a jury trial in the Wayne County, Michigan circuit court in December 2001. He was sentenced on January 11, 2002 to concurrent prison terms of thirty-nine to sixty years for the murder and armed robbery convictions and a consecutive two-year prison term for the felony firearm conviction. The petitioner challenges his convictions on the grounds that: (1) prior bad acts evidence was improperly admitted; (2) a police officer improperly testified that co-perpetrators were arrested; (3) insufficient evidence was presented; (4) the court gave an incomplete instruction regarding aiding and abetting; and (5) improper jury selection procedures were used. The respondent has filed a response to the petition asserting that the claims are unexhausted, procedurally defaulted, or without merit. The Court finds that three of the petitioner's claims lack merit and a fourth claim is procedurally defaulted. But the

remaining claim – the lack of sufficient evidence to support the second-degree murder conviction – requires issuance of the writ as to that count of conviction only. The petition therefore will be granted in part and denied in part.

I.

The petitioner's convictions arise from the shooting death of Robert Pippins on November 19, 1999 in Detroit, Michigan during the course of a robbery. There was no evidence that the petitioner was present during the incident, but he admitted giving his firearm to one of the perpetrators. The Michigan Court of Appeals summarized the facts related to the murder as adduced at the petitioner's trial as follows:

> In the early morning hours of November 19, 2001 [sic – should read "November 19, 1999"], Detroit police officer David Archambeau was dispatched to a residence on St. Mary's Street regarding a domestic situation. While standing on the porch of that residence, he heard gunshots from the direction of nearby Mansfield Street. He turned and observed four black males running toward his location. One of the men was dressed in a long coat and appeared to be clutching a rifle or gun under his coat. The men entered a maroon Plymouth Sundance and Archambeau and his partner pursued them. The Sundance pulled into an alley, and three of the men exited the vehicle and ran in a northwest direction. The driver of the vehicle ran in a southerly direction. None of the four men were apprehended at that time.
>
> An inventory search of the vehicle revealed a loaded .22 rifle with the stock cut off, thirty-six zip lock baggies of suspected crack cocaine, twenty-six zip lock baggies of suspected marijuana, money, and a photograph that appeared to be of the driver of the vehicle with his family. Keys in the ignition of the car in the photograph matched the keys that were in the ignition of the Sundance. Officer Archambeau identified the man in the photograph as Michael Hadley.
>
> The following day, Deangelo Whitley and Deleon Tate were arrested for the murder of Robert Pippins, who resided at 12145 Mansfield Street. Pippins was discovered shortly before midnight on November 18 by his girlfriend, Crystal Robinson, and her friends. He was discovered on the lawn in the backyard of his house, alive but laboring to breathe. Robinson and her friends took Pippins to a hospital, where he later died.

> Robinson testified that Pippins sold drugs out of his house on Mansfield. On a prior occasion, she observed a .22 rifle at the house. She identified the rifle produced at trial as the same rifle she had seen at Pippins' house.
>
> Dr. Leigh Hlavaty performed the autopsy on Pippins. She testified that Pippins was shot five times. Four shots were from a large caliber weapon and one shot was from a small caliber weapon.
>
> Officer David Pauch examined the semi-automatic rifle and .22 long rifle bullets. He testified that a cartridge case retrieved from the scene was fired from the weapon retrieved. Three bullets that he examined were fired from the same 9 mm or .38, but the weapon from which the bullets were fired was not available for his examination.
>
> Investigator Gregory Edwards testified that his investigation suggested that defendant might be a suspect in this crime, but that defendant was in Alabama. Defendant was brought back to Michigan after being arrested on another criminal matter. In a statement, defendant indicated that he did not know anything about a killing until after his cousin (Tate) and Whitley told him after they "hit a lick" (committed a robbery). Tate and Whitley had asked for the use of his gun, stating that they were going to commit a robbery. Defendant gave Whitley his .38. He indicated that "Little Mike" (Hadley) was with Tate and Whitley when they committed the robbery. The next day, Whitley told defendant that they had to throw the gun away after they had "busted this nigger because the hooks (police) were chasing them." Whitley told defendant that he went into a gas station and while inside someone stole his car. He asked defendant to lie and say that defendant was with them. Defendant did not want to be involved and went to Alabama. Defendant said it was Tate, Whitley, and Hadley who were involved in the crime. During the interview, defendant identified a picture of Hadley and indicated that it was Whitley or Hadley who "smoked" Pippins.

*People v. Stewart*, 2003 WL 22359378, *2 (Mich. Ct. App. Oct. 16, 2003).

The petitioner was charged with first-degree felony murder, along with armed robbery and felony firearm, and the state proceeded under an aiding and abetting theory. The jury found the petitioner guilty of the lesser included offense of second-degree murder, plus armed robbery and felony firearm. Following sentencing, the petitioner filed an appeal of right in the Michigan Court of Appeals in which he presented the following claims: (1) "Defendant was deprived of his Ams V and XIV rights of due process when the prosecutor permitted a police officer to expose Defendant's

prior criminal history"; (2) "Defendant was deprived of his Ams V and XIV rights of due process when a police officer testified that alleged co-perpetrators Tate and Bradley were arrested"; (3) "Defendant was deprived of his Ams V and XIV rights of due process when the evidence before the trial court failed to show guilt beyond a reasonable doubt"; and (4) "Defendant was deprived of his Ams V and XIV rights of due process when the court failed to charge CJI 8.3." Brf. on App. at 2. The Michigan Court of Appeals affirmed the petitioner's convictions on October 16, 2003. *People v. Stewart*, 2003 WL 22359378 (Mich. Ct. App. Oct. 16, 2003).

The petitioner filed an application for leave to appeal in the Michigan Supreme Court presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Stewart*, 470 Mich. 859, 679 N.W.2d 700 (Apr. 30, 2004) (Table).

The petitioner now seeks habeas corpus relief on the following grounds:

I. Petitioner was deprived of his Ams. V and XIV rights of due process when fidelity to court rule was not observed in the selection of jurors.

II. Petitioner was deprived of his Ams. V and XIV rights of due process when the prosecutor permitted a police officer to expose Petitioner's prior criminal history.

III. Petitioner was deprived of his Ams. V and XIV rights of due process when a police officer testified that alleged co-perpetrators Tate and Hadley were arrested.

IV. Petitioner was deprived of his Ams. V and XIV rights of due process when the trial court failed to charge CJI 8.3.

V. Petitioner was deprived of his Ams. V and XIV rights of due process when the evidence before the trial court failed to show guilt beyond a reasonable doubt.

The respondent has filed an answer to the petition arguing that none of the petitioner's claims warrant habeas relief because they are unexhausted, procedurally defaulted, and otherwise lack merit.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v.*

*Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

In his first claim, the petitioner alleges that he is entitled to habeas relief because the jury selection procedures failed to comport with Michigan Court Rule 2.511, which prescribes the manner of selecting jurors and exercising challenges . The petitioner contends this Rule was violated in that, after certain jurors were excused pursuant to peremptory challenge, "the Court seated [replacement] jurors by groups rather than individually." Pet. at 4. The respondent contends that this claim is unexhausted because it was not presented to the state courts.

A prisoner must exhaust his state court remedies before seeking federal habeas relief by fairly presenting the substance of each federal constitutional claim in state court. 28 U.S.C. §§ 2254(b)(1)(A) and 2254(c). "'A petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns.'" *Carter v. Bell*, 218 F.3d 581, 607 (6th Cir. 2000) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). Here, there can be no question but that the petitioner failed to fairly present this claim to the state courts; his objection to the jury selection procedure appears for the first time before this Court.

Nevertheless, a federal court may deny a habeas petition on the merits despite a petitioner's failure to exhaust state remedies for all his claims. 28 U.S.C. § 2254(b)(2); *see also Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991) (holding that the doctrine of exhaustion raises only federal-state comity concerns and is not a jurisdictional limitation of the power of the court). The Court has concluded that this claim does not warrant habeas corpus relief. Accordingly, in the

interests of efficiency and justice, the Court will address petitioner's claim rather than dismiss the petition on the ground of failure to exhaust. *See* 28 U.S.C. § 2254(b)(2); *Cain*, 947 F.2d at 819 (holding that where an unexhausted federal constitutional claim is plainly meritless, "it would be a waste of time and judicial resources to require exhaustion").

Relying upon the Michigan Supreme Court's decision in *People v. Miller*, 411 Mich. 321, 307 N.W.2d 335 (1981), the petitioner claims that he is entitled to habeas corpus relief because the jury selection procedure failed to comply with Michigan Court Rule 2.511. It is well-established, however, that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Louis v. Jeffers*, 497 U.S. 764, 780 (1990)). A federal court is limited on federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Ibid.*

The petitioner's claim regarding the jury selection procedure relies entirely upon state law. Accordingly, it may not form the basis for federal habeas corpus relief.

B.

In his second claim for habeas corpus relief, the petitioner alleges that his right to due process was violated when a police officer testified that the petitioner was brought to Michigan after he was arrested in Alabama on an unrelated criminal matter. The respondent contends that this claim was decided by the state court on the basis of a procedural rule that provides an adequate and independent state-law ground, and the federal claim should not be reviewed because of the petitioner's procedural default in state court.

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review

> of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Application of the cause-and-prejudice bar may be avoided if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (6th Cir. 1994); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001); *see also Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30. Finally, the state procedural rule must amount to an "adequate and independent" state law ground. *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Whether the independent state ground is adequate to support the judgment is itself a federal question. *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

The last state court to issue a reasoned opinion on this claim, the Michigan Court of Appeals, held that the claim was not preserved because counsel failed to lodge a timely objection. *Stewart*, 2003 WL 22359378 at *2. The contemporaneous-objection rule was firmly established and regularly followed with respect to claims regarding the admission of evidence at the time of the petitioner's trial. *See People v. Grant*, 445 Mich. 535, 545, 520 N.W.2d 123 (1994); *People v. Aldrich*, 246 Mich. App 101, 113 (2001); Mich. R. Evid. 103(a)(1). The petitioner fails to assert cause to excuse his procedural default. His claim is therefore barred unless he can establish a

constitutional error resulting in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995).

The Supreme Court has held that application of the "miscarriage of justice" exception to the procedural default rule should apply only to cases where there is a likelihood of convicting a person who is actually innocent. *Schlup*, 513 U.S. at 321. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. He has not done so here. In fact, the petitioner has point to no new evidence that the jury was not given. Therefore, his procedural default will not be excused on this ground.

Moreover, even if this claim were not procedurally barred, it fails to state a claim upon which relief may be granted. "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994) (citing *Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985)). An evidentiary ruling violates a criminal defendant's due process rights only "when it is so egregious that it results in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals, in reviewing this claim for plain error, held that even if the police officer's reference to the petitioner being in custody on another charge was improper, it "was not so shocking that it seriously affected the fundamental fairness and basic integrity of the proceedings below, nor did the error result in the conviction of an actually innocent person." *Stewart*, 2003 WL 22359378 at *2. The Court agrees with the court of appeals' finding that the

isolated reference to the petitioner's involvement in another criminal matter, made in the context of describing how the officer came into contact with the petitioner, *see* Trial Tr., Dec. 19, 2001 at 26-27, did not violate the petitioner's fundamental right to a fair trial. That finding did not contradict or unreasonably apply federal law. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1995); *see also Fry v. Pliler*, 127 S. Ct. 2321 (2007); *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007).

C.

Next, the petitioner claims that he was deprived of his right to due process when a police officer testified that co-perpetrators Tate and Hadley had been arrested. The petitioner posits that such evidence stripped the jury of its role to determine whether a crime was committed in the first instance, a finding necessary to the petitioner's conviction on an aiding and abetting theory. The respondent contends this claim is frivolous because evidence indicating that an arrest was made does not compel the conclusion that a crime was committed.

The Michigan Court of Appeals held that the testimony was not improper. To begin with, the court noted that testimony that Hadley and Tate had been arrested was first elicited by the petitioner, not the prosecutor. Second, the court stated that "evidence that others were arrested does not take away from the jury the determination of whether a crime was committed since an arrest is not a determination of guilt." *Stewart*, 2003 WL 22359378 at *2.

As mentioned above, "[h]abeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons,* 34 F.3d at 357. The testimony at issue was limited in its context to illustrate the course of the police investigation, and the officer did not state that the co-perpetrators had been convicted. *See* Trial Tr., Dec. 19, 2001 at 40. Likewise, the prosecutor did not argue that the jury should convict the petitioner based on the

arrest of Tate and Hadley. "[T]he admission of [this] evidence [did not constitute] a constitutional violation." *Clemmons*, 34 F.3d at 357. The petitioner's right to a fair trial was not abridged, and this claim does not warrant the issuance of a writ of habeas corpus.

D.

In his fourth claim, the petitioner argues that the trial court erred in failing to instruct the jury with Michigan Criminal Jury Instruction 8.3. The respondent submits that even if the petitioner is correct, this claim at most establishes only a violation of state law.

Michigan Criminal Jury Instruction 8.3 reads:

(1) The defendant says that [he/she] is not guilty of [state charged offense] because [he/she] did not intend to help anyone commit that offense.

(2) It is not sufficient for the prosecutor just to prove that the defendant intended to help another in the common unlawful activity of [state common criminal enterprise]. It is necessary that the prosecutor prove beyond a reasonably doubt that the defendant intended to help someone else commit the charged offense of [state charged offense].

(3) In determining whether the defendant intended to help someone else commit the charged offense of [state charged offense], you may consider whether that offense was fairly within the common unlawful activity of [state common criminal enterprise], that is, whether the defendant might have expected the charged offense to happen as part of that activity. There can be no criminal liability for any crime not fairly within the common unlawful activity.

CJI2d 8.3. The use note to CJI2d 8.3 provides that "[t]his instruction is intended for use where it is claimed that the defendant is criminally liable as an aider and abettor for a crime committed during the course of a criminal enterprise." CJI2d 8.3, use note; *see also People v. Durant,* 2006 WL 3207230, *6 (Mich. Ct. App. November 7, 2006). The use note goes on to state: "CAUTION: DO NOT USE THIS INSTRUCTION IN FELONY-MURDER CASES." CJI2d 8.3, use note (emphasis in original).

An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The Court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Ibid*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that the trial court was correct in declining to give the requested instruction because the instruction was not "substantially correct," in that the use note for CJI2d 8.3 indicated that the instruction should not be given in felony murder cases, such as this. *Stewart*, 2003 WL 22359378 at *4. In addition, the state court held that the trial court gave a complete instruction on aiding and abetting. *Ibid.*

The petitioner has failed to show that the court of appeals' conclusion that the requested jury instruction was not appropriate under state law deprived him of a right secured by the Constitution. Therefore, the Court will deny relief on this claim.

E.

Finally, the petitioner claims that the prosecutor failed to establish his guilt of all the crimes charged beyond a reasonable doubt. The respondent contends that the Michigan Court of Appeals rejected this claim through its reasonable application of the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.' " *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, "[t]he mere existence of sufficient evidence to convict . . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

The petitioner was convicted of second-degree murder and armed robbery under an aiding and abetting theory. He also was convicted of felony firearm, but he does not appear to challenge that conviction on sufficiency of the evidence grounds apart from the underlying felonies. The

Court has little trouble concluding that the State offered sufficient evidence to prove that the petitioner aided and abetted the armed robbery. As the state court of appeals observed:

> Here, there was sufficient evidence for a jury to conclude that defendant participated with Hadley, Tate, and Whitley in the armed robbery of Pippins. Defendant provided Tate and Whitley with the weapon used to commit the robbery and kill Pippins. Indeed, defendant stated to the police that he gave the gun to Whitley knowing that he intended to commit a robbery.

*Stewart*, 2003 WL 22359378, *3.

The elements of armed robbery are (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a dangerous weapon or with an article used or fashioned in such a way as to lead a reasonable person to believe that it is a dangerous weapon. *People v. Ford*, 262 Mich. App. 443, 458, 687 N.W.2d 119, 128 (2004). "To establish that a defendant aided and abetted a crime, a prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or knew that the principal intended to commit the crime at the time he gave aid and encouragement." *Riley v. Berghuis*, 481 F.3d 315, 322 (6th Cir. 2007) (citing *People v. Carines*, 460 Mich. 750, 758, 597 N.W.2d 130, 135 (1999)). Under Michigan law, an "aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 460 Mich. at 758, 597 N.W.2d at 135. "The quantum of aid or advice is immaterial as long as it had the effect of inducing the crime." *People v. Lawton*, 196 Mich. App. 341, 352, 492 N.W.2d 810, 816 (1992).

The state court of appeals reasonably applied *Jackson v. Virginia* when it found sufficient evidence to support the armed robbery conviction in light of the "substantive elements of the criminal offense as defined by state law." *Brown*, 441 F.3d at 351 (internal quotes and citation omitted). In his statement to police, the petitioner stated that his cousin, Deleon Tate, asked to borrow his gun for the purpose of committing a robbery. The petitioner lent him the gun, knowing this was his purpose. The victim's girlfriend testified that the victim sold drugs out of his house, typically had large amounts of cash in his home from drug sales, and owned a .22 rifle. An inventory search of the vehicle which was driven away from the shooting revealed a .22 rifle, thirty-six bags of suspected crack cocaine, twenty-six bags of suspected marijuana, and money. The prosecutor's theory was that these items were taken from the victim's home during an armed robbery. Evidence that the petitioner furnished the gun with knowledge that it was to be used in a robbery satisfied the State's burden of proving that the petitioner aided an armed robbery.

The question whether this evidence also was sufficient to convict the petitioner of second-degree murder is more troubling. Under Michigan law, the necessary elements of second-degree murder require proof of: (1) a death, (2) caused by an act of the defendant, (3) while the defendant had the intent to kill, the intent to cause great bodily harm, or the intent to perform an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm, and (4) without justification or excuse. *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001). Is furnishing a gun to one bent on robbery, without knowledge that he also intends to kill, sufficient under state law to convict as an aider and abettor?

The Sixth Circuit has noted the following about Michigan's second degree murder jurisprudence:

> [M]alice cannot be inferred from [a defendant]'s complicity in the robbery plot alone. *See People v. Aaron*, 409 Mich. 672, 299 N.W.2d 304, 326 (1980) (stating that the commission of an underlying felony does not alone satisfy requirement of malice). Rather, a factual examination is necessary to determine whether [the petitioner] possessed an intent to kill or cause great bodily harm beyond his intent to rob.

*Hill v. Hofbauer*, 337 F.3d 706, 719 (6th Cir. 2003); *see also People v. Wilder*, 411 Mich. 328, 340, 308 N.W.2d 112, 115 (1981) ("The underlying felony itself will no longer per se provide the element of malice in such prosecutions."), *overruled on other grounds*, *People v. Ream*, 481 Mich. 223, 750 N.W.2d 536 (2008). However, specific facts surrounding the commission of a felony may be sufficient to support conviction, including "kind of weapon used, the nature of the wounds inflicted, the circumstances surrounding the killing, the acts, conduct and language of the accused or any other circumstances in evidence." *People v. Kelly*, 423 Mich. 261, 274, 378 N.W.2d 365, 371 (1985). In *Kelly*, the Michigan Supreme Court stated that "The felony is a factor the jury may use to find malice." *Id.* at 273, 378 N.W.2d at 370. However, the felony alone is insufficient by itself to prove complicity in an ensuing death. *People v. Dumas*, 454 Mich. 390, 402-04, 563 N.W.2d 31, 36-37 (1997) (finding a erroneous an instruction that told a jury that "it *may* infer defendant's intent to create a high risk of death or great bodily harm with the knowledge that death was the likely result from the intent to commit the underlying crime *alone*, even if the facts and circumstances of the crime did not support that finding").

Other Michigan state court decisions found sufficient evidence to support a murder conviction of a co-perpetrator of a robbery when the defendant was present and assisted in the act of robbery, *People v. Akins*, 259 Mich. App. 545, 555-56, 675 N.W.2d 863, 873-74 (2003), and when the defendant "plann[ed] the robbery, suppl[ied] the loaded weapon, and provid[ed] a means of escape," *People v. Hart*, 161 Mich. App. 630, 635-36, 411 N.W.2d 803, 805-06 (1987).

Likewise, this Court "had little difficulty finding malice as an element of murder from evidence that a defendant voluntarily participated in robbing a victim using a firearm, even though that defendant was not the actual shooter." *Wolfe v. Bock*, 412 F. Supp. 2d 657, 682 (E.D. Mich. 2006). However, the Court has found no case – and the respondent has cited none – in which the mere act of furnishing a gun to be used in an armed robbery constituted sufficient evidence to support a conviction for a murder committed during the course of a robbery. And that is all that the State proved against the petitioner here.

> The Sixth Circuit states:
>
> Under an aiding and abetting theory, the State must prove either that [Stewart] held the requisite intent for second-degree murder or had knowledge that [Whitley and Tate] held that intent. *See People v. King*, 210 Mich. App. 425, 534 N.W.2d 534, 538 (1995). An aider and abettor of a robbery must know of his cohort's intent to kill the victim, or at least his intent to physically harm the victim, before he can be found to have aided and abetted the murder as well. Such intent can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon. *See, e.g., People v. Feldmann,* 181 Mich. App. 523, 449 N.W.2d 692, 697 (1989); *see also People v. Turner*, 213 Mich. App. 558, 540 N.W.2d 728, 733 (1995), *overruled in part on other grounds, People v. Mass*, 464 Mich. 615, 628 N.W.2d 540, 548 (2001). However, "[i]t is fundamentally unfair and in violation of basic principles of individual criminal culpability to hold one felon liable for an unforeseen death that did not result from actions agreed upon by the participants." *Turner*, 540 N.W.2d at 738.

*Hill*, 337 F.3d at 719 -720.

The state court of appeals found sufficient evidence of murder based on the sole observation that "[t]he use of a gun to commit the robbery is sufficient to infer malice." *Stewart*, 2003 WL 22359378, *3. But the petitioner did not "use" a gun in this case. There is no evidence that he was even present at the robbery scene, or that he had any role in planning the robbery or the escape or participated in the proceeds. The Court finds, therefore, that the record fails to contain evidence from which the jury could have found or inferred all the elements of second-degree murder beyond

a reasonable doubt as that crime is defined by state law. *See Brown*, 441 F.3d at 351. Therefore, the state courts' conclusion that sufficient evidence was adduced at trial to support the second-degree murder conviction was an unreasonable application of *Jackson v. Virginia*.

### III.

The Court finds no merit to any of the petitioner's claims except the claim that the State failed to prove his responsibility for second-degree murder beyond a reasonable doubt. The petitioner is not entitled to relief from his convictions of armed robbery and felony. However, the Court will grant the petition for writ of habeas corpus in part and order the petitioner released on his second-degree murder sentence. The sentences for felony firearm and armed robbery remain unaffected by this order.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the respondent shall release the petitioner from custody only insofar as the detention is based on the petitioner's conviction for second-degree murder.

It is further **ORDERED AND DECLARED** that the petitioner's sentences for armed robbery and felony firearm **DO NOT VIOLATE** the Constitution or laws of the United States.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated: July 18, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 18, 2008.

                              s/Felicia M. Moses
                              FELICIA M. MOSES